* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. The employee is Ralph D. Robbins.
3. The employer is J.A. Jones.
4. The defendant-carrier for defendant-employer J.A. Jones is Zurich American Insurance.
5. The defendant-employer regularly employees three or more employees and is bound by the North Carolina Worker's Compensation Act. The employer/employee relationship existed between defendant-employer and plaintiff on March 5, 1997.
6. Plaintiff's average weekly wage is $322.83.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 63 years old. Plaintiff was employed by defendant-employer as a paint supervisor from October 1993 through March 1997. Plaintiff filed a claim for benefits under the Workers' Compensation Act based upon the contention that he developed occupational lung diseases, specifically chronic obstructive pulmonary disease (COPD), bronchitis and emphysema as a result of chemical exposures arising out of and in the course of his employment with defendant-employer.
2. A mediated settlement conference was held on 24 July 2001. Attorney Samuel A. Scudder represented plaintiff and Robert S. Welch, attorney with the firm of Brooks, Stevens and Pope, represented defendants. The mediator was Lawrence B. Shuping, Jr.
3. At the mediation, the parties reached an agreement wherein defendants would pay to plaintiff the sum of $22,000.00 in satisfaction of his claim. In addition, defendants agreed to pay all medical bills up to the date of the agreement and Mr. Shuping's mediation fee. Mr. Shuping entered the terms of the agreement in a memorandum of the agreement, which was signed by plaintiff, Mr. Scudder, Mr. Welch, a representative of defendant-carrier and Mr. Shuping.
4. Plaintiff was advised by counsel that the Memorandum of Agreement was preliminary to a more formal agreement which would be forwarded to plaintiff upon its completion, and that the settlement would not be completed until the formal agreement was signed and the Industrial Commission approved the agreement.
5. On August 27, 2001, plaintiff's counsel sent a letter to defendants' counsel noting the agreement at the mediated settlement conference and offered specific language to be included in the Final Agreement that defendants were preparing for signature.
6. On September 7, 2001, plaintiff's counsel wrote a letter to defendants' counsel noting receipt of a proposed Final Agreement and suggesting a change in the language.
7. On September 11, 2001, defendants sent plaintiff's counsel the Final Agreement for signature. On September 12, 2001, plaintiff's counsel forwarded the Final Agreement to plaintiff for his signature.
8. Approximately one week later, plaintiff notified counsel that he was refusing to sign the Final Agreement because he did not want to accept the terms of the agreement. On December 7, 2001, plaintiff's counsel moved to withdraw as plaintiff's attorney on grounds that plaintiff failed to sign the Final Agreement and that plaintiff had failed to provide counsel with "the necessary information to take this claim to hearing, even though the same has been requested on several occasions." Counsel's Motion to Withdraw was allowed.
9. Plaintiff testified that at the end of the mediation conference he advised Mr. Scudder that he did not agree with the terms of the agreement and that he did not want to sign the agreement or accept the settlement offer. He further stated that Mr. Scudder told him that he should just sign the agreement, that it did not matter as it was merely a formality, and it was not binding until the Final Agreement was signed. Plaintiff also testified that when he notified counsel of his refusal to sign the Final Agreement, counsel advised him that if he did not think the agreement was fair, he should seek other counsel.
10. Plaintiff's testimony that his counsel advised him that signing the Memorandum of Agreement was meaningless is not taken as credible and is not supported by the deposition testimony of Mr. Scudder. Further, based upon both counsels' activity in furtherance of completing the Final Agreement after the mediation conference, it is apparent that there was every expectation following the conference that the agreement was accepted. Therefore, plaintiff's testimony that he expressed his refusal to accept the terms of the settlement at the mediation conference is likewise not taken as credible.
11. This process of creating the Final Agreement took several weeks after the mediation conference and included the participation of plaintiff's counsel. At no time during the process did plaintiff's counsel indicate to defendants, either overtly or through his actions, that the terms of the agreement were not acceptable to plaintiff. It is apparent that plaintiff's counsel had no inkling of plaintiff's impending refusal to accept the agreement prior to his actual refusal. Accordingly, the greater weight of the credible evidence shows that plaintiff was aware of the terms of the Agreement and signed the Agreement without fraud, misrepresentation, mutual mistake or undue influence.
12. The final Compromise Settlement Agreement has been reviewed by the undersigned who find the Agreement fair and just to both parties. There is no evidence as to fraud, misrepresentation, mutual mistake or undue influence in the signing of the Memorandum of Agreement.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Compromise settlement agreements, including mediated settlement agreements, "are governed by general principles of contract law." Chappell v. Roth, 353 N.C. 690, 692,548 S.E.2d 499, 500, reh'g denied, 354 N.C. 75, 553 S.E.2d 36 (2001). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Northington v. Michelotti,121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). "To be enforceable, the terms of a contract must be sufficiently definite and certain." Miller v. Rose, 138 N.C. App. 582,587-88, 532 S.E.2d 228, 232 (2000). A Memorandum of Settlement that fully complies with Rule 502(2) of the Workers' Compensation Rules constitutes a valid compromise settlement agreement subject to approval by the Industrial Commission pursuant to Rule 502(1).Lemly v. Colvard Oil Company, 157 N.C. App. 99, 577 S.E.2d 712
(2003).
2. The language of the Memorandum of Agreement clearly states that the parties agreed to settle plaintiff's claim for $22,000.00 and that defendants would pay for all related medical expenses to the date of the mediation conference. The Agreement also states that plaintiff "will execute a Clincher Agreement releasing the defendant from all liability arising under the provisions of the N.C. Workers' Compensation Act . . ." Defendants prepared a Clincher Agreement in accordance with the requirements of the Act and incorporating all suggested changes offered by plaintiff's counsel; therefore, the Agreement satisfies the requirements of Lemly. Id.
3. The Memorandum of Agreement fully complies with the requirements of the Act and constitutes a valid compromise settlement agreement subject to approval by the Industrial Commission. N.C. Gen. Stat. § 97-17. Having reviewed the Final Agreement, the undersigned find it to be fair and just to all parties and hereby APPROVES the agreement.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay plaintiff pursuant to the terms of the Final Settlement Agreement.
2. A reasonable attorney's fee of 25% of the amount paid pursuant to the Compromise Settlement Agreement is hereby approved to be deducted from sums due plaintiff and paid directly to Samuel A. Scudder as plaintiff's counsel during the period of settlement negotiations.
3. Each side shall pay its own costs.
This the __ day of May, 2006.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER